Bell, J.
This case presents a single question: What is the proper interpretation of the following language contained in Section 35, Article II of the Constitution, as amended effective January 1, 1924, “such amount as shall be found to be just, not greater than fifty nor less than fifteen per centum of the maximum award established by law?”
A consideration of the historical background of workmen’s compensation is essential to the determination of this controversy.
The workmen’s compensation law first made its appearance upon the statute books in 1911 (102 Ohio Laws, 524). The subject of workmen’s compensation was considered by the Constitutional Convention of 1912 and the adoption of Section 35, Article II, resulted, which was submitted to and approved by the people in September, 1912.
The amendment as adopted read as follows:
“For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen’s employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state determining the terms and conditions upon which payment shall be made therefrom, and taking away any or all rights of action or defenses from employees and employers; but no right of action shall be taken away from any employee when the injury, disease or death arises from failure of the employer to comply with any lawful requirement for the protection of the lives, health and safety of employees. Laws may be passed establishing a board which may be empowered to classify all occupations, according to their degree of hazard, to fix rates of contribution to such fund according to such classification, and to collect, *429 administer and distribute such fund, and to determine all rights of claimants thereto.” (Italics ours.)
Under the permissive authority of this provision the General Assembly in 1913 created the Industrial Commission of Ohio, Section 871-1 et seq., General Code (103 Ohio Laws, 95). By the provisions of that act the State Liability Board of Awards (created by the act of 1911) was superseded and the Industrial Commission succeeded to the duties and prerogatives of the board of awards as then provided by Section 1465-37 et seq., General Code.
It should be noted that by the terms of the amendment as originally adopted it was provided, “but no right of action shall be taken away from any employee when the injury, disease or death arises from failure of the employer to comply with any lawful requirement for the protection of the lives, health and safety of employees.”
Under the authority of that provision of the Constitution laws were passed making all injuries to workmen occasioned in the course of their employment compensable except injuries which were purposely self-inflicted. Where injuries were caused by the wilful act of the employer or by his failure to comply with a lawful requirement, the workman, or in case of death his legal representative, could bring an action at law for damages, and if successful in establishing that the injury or death was so caused, could recover not only compensation but punitive damages. If, however, the workman, or in case of death his legal representative, was unsuccessful in such action he was then without remedy. (Section 1465-76, General Code, 103 Ohio Laws, 84.)
The workman, or in case of death his legal representative, was required to elect at his peril either to bring an action for damages or to apply for compensation.
*430 That was the state of the ■ law until. the year 1923, when the-.General Assembly by joint resolution. (110. Ohio .Laws, 631) ordered submitted to the electors a proposed amendment of Section 35, Article II; the proposed amendment was submitted to and adopted by the people -in November, 1923, and became effective January 1,1924.
So much of the amended section as is pertinent here reads as .follows :
“Such board shall have full power and.authority to hear and determine whether or.not an injury, disease or death, resulted - because of the failure of the employer to comply with any specific requirement for the protection of the. lives, health or safety of employees, enacted by the General Assembly or in the form of an order adopted by such board, and its decision shall be final; .auditor the purpose of such investigations and inquiries it may appoint referees. When it is found, upon hearing,- that an injury, disease or death resulted because, of such failure by the employer, such amount as shall be found to be just, not greater than fifty nor less ¡than - fifteen per centum of the maximum award established by laio, shall be added by the board, to the amount of the compensation that may be awarded on account-of such injury, disease, or death, and paid in like manner as .other dwards; and,- if such compensation is- paid from the state fund, the premium of such employer shall be increased in such, amount, covering such period of time as may be fixed, as will recoup the state fund'in-the amount of such additional award, notwithstanding any and all other- provisions in this Constitution.” ■ (Italics ours.)
By this amendment, the right of the workman (or in case of death his legal fe-presentátive) to maintain an action át law was extinguished! even though-the'injury was caused by a complying employer’s violation of a lawful requirement; after the effective date of the *431 amendment, regardless of how the injury .occurred, the i-ights of the workman (or in case of death his legal representative) were determined by the Industrial Commission under the compensation act. Thereafter the courts were without jurisdiction to entertain an action for damages for death, personal injury or occupational disease brought by or on behalf of a workman against his complying employer. That result was deemed to be advantageous to both workman and employer. The employer could not be subjected to an action which might result in his being compelled to pay both compensatory and punititive damages, and the workman (or in case of death his legal representative) was relieved from electing at his peril either to prosecute an action or apply for compensation. The net result was that for every injury sustained in the course of and arising out of the employment the workman was entitled to compensation, regardless of whether the injury was caused by unavoidable accident, by his own negligence, the negligence of a fellow workman, or the failure of his employer to comply with a lawful requirement. The only exception was an injury which was purposely self-inflicted.
We deem it important that in original Section 35, Article II, the purpose was stated thus: “For the purpose of providing compensation to workmen aud their dependents, for death, injuries or occupational disease- ' * * ”; and although Section 35, Article II, was amended generally in 1923 the above quoted language is still-found intact in the amendment.
In our opinion the fact that the purpose clause remained unchanged indicates á clear legislative intent to provide compensation only, regardless of how the injury occurred.
We come now to a consideration of the following specific language of Section 35, Article II, as amended, which is the basis of the instant controversy: “When. *432 it is found, upon hearing, that an injury, disease or death resulted because of such failure [to comply with a lawful requirement] by the employer, such amount as shall be found to be just, not greater than fifty nor less than fifteen per centum of the maximum award established by law, shall be added by the board, to the amount of the compensation that may be awarded on account of such injury, disease, or death, and paid in like manner as other awards * * (Italics ours.)
The relator contends that the phrase “the maximum award established by law” as used in the Constitution, properly construed, requires the payment of not more than fifty nor less than fifteen per centum of the greatest amount of money which claimant could have received under the provision of the statute applicable to his particular type of disability. The respondent contends that the above-quoted phrase properly construed requires the payment of not more than fifty and not less than fifteen per centum of the amount awarded by the commission to the claimant under the provisions of the applicable statute.
The general rule as to the interpretation of constitutional amendments may be stated thus: The body enacting the amendment will be presumed to have had in mind existing constitutional or statutory provisions and their judicial construction, touching the subject dealt with.
Applying this rule to the instant case it will be presumed that in proposing and adopting the constitutional amendment of 1923, the General Assembly and the people of Ohio, respectively, had in mind the existing statutes and their judicial construction, touching the subject of workmen’s compensation.
In this phrase “maximum award established by law” the words “established by law” must be held to mean established by statute; the question then is, what was the “maximum award” established by statute at the *433 time of relator’s injury? The case therefore turns upon the proper construction of the words “maximum award” as used in the Constitution.
In Webster’s New International Dictionary the word “maximum” is defined as follows: “Greatest in quantity or highest in degree attainable or attained.”
In the Century Dictionary it is thus defined: ‘£ The greatest amount, quantity, or degree; the utmost extent or limit: opposed to mmimum, the smallest.”
In Webster’s the word “award” is defined as “A judgment, sentence, or final decision,” and in the Century as “A decision after examination and deliberation. ’ ’
In the case of Industrial Commission v. Cross, 104 Ohio St., 561, 136 N. E., 283, decided April 25, 1922, this court said in paragraph one of the syllabus:
“In the enactment of the present workmen’s compensation law the Legislature acted in pursuance of the authority conferred by Section 35, Article II of the Constitution of Ohio adopted in 1912, and where it used the same words or terms used in that section it will be presumed that it used them in the same sense that they are therein used.”
The language here in question was not found in the Constitution at the time the Cross case was decided but the rule therein announced applies with equal force and logic to the instant case.
The General Assembly having enacted the present workmen’s compensation law since the adoption of the constitutional amendment, it will be presumed the words “maximum” and “award” are used in the statutes in the same sense as used in the Constitution.
No useful purpose would be served by setting forth all the various provisions of the General Code with reference to the Industrial Commission and workmen’s compensation. As now in effect they mav be found in *434 Sections 871-1 to 871-53ci, both inclusive, and 1465-37 to 1465-112, both inclusive, General Code.
The relator claimed and was paid compensation for temporary total disability and facial disfigurement, hence we are concerned only with Sections 1465-79 and 1465-80, General Code, which provided for those types of disability.
Section 1465-79, General Code (117 Ohio Laws, 252), providing for compensation for temporary total disability, in effect during that period of time for which relator was allowed compensation, read in part as follows :
“In case of temporary disability, the employee shall receive sixty-six and two-thirds per cent of his average weekly wages so long as such disability is total, not to exceed a maximum of eighteen dollars and seventy-five cents per week, * * * but in no case to continue for more than six years from the date of the injury, nor to exceed three thousand seven hundred and fifty dollars.” (Italics ours.)
Section 1465-80, General Code (117 Ohio Laws, 113), providing for compensation for partial disability and head or facial disfigurement, in effect at that time, read in part as follows:
“In case an injury results in serious facial or head disfigurement which impairs the opportunities to secure or retain employment, the Industrial Commission of Ohio, may in its discretion, make such award of compensation as it may deem proper and equitable, in view of the nature of the disfigurement and not to exceed the sum of thirty-seven hundred and fifty dollars.
“The amounts specified in this clause are all subject to the limitation as to the maximum weekly amount payable as hereinbefore specified in this section.” (Italics ours.)
The maximum amount payable weekly as the sec *435 tions then,.read-was eighteen dollars and seventy-five cents ($18.75) per week.
The relator was granted compensation for temporary total disability from June 20,1941, to August 31, 1941, both inclusive, and he also was granted compensation on account of facial disfigurement in the sum,of. seven hundred and fifty dollars ($750).
The respondent having found that the injury was caused by the employer’s failure to comply with a lawful requirement, awarded additional compensation “in an amount-equal to 50% of the compensation heretofore and hereafter paid in this claim.”
Belator claims that by virtue of Section 35, Article II, he is entitled to fifty per centum of four thousand dollars ($4,000) for temporary total disability and fifty per centum of thirty-seven hundred and fifty dollars ($3,750) for facial disfigurement. In other words he claims that the phrase “maximum award established by law” means the greatest sum of money fixed by the statute covering his type of injury.
Bespondent claims that the additional awards as granted are a full compliance with the constitutional provision.
A careful study of the Workmen’s Compensation Act since its inception discloses that the commission had and now has the following duties to perform :
. 1. To classify all occupations according to their degree of hazard.
2. To fix. rates of contribution to the workmen’s compensation fund according to the classification, and to Collect, administer and distribute such fund.
3. To determine whether the injury upon which the claim is founded was sustained in the course of and arose out of the employment.
4. To properly classify and determine the nature and extent of the injurv.
*436 5. To determine the average weekly wage of the injured employee.
In each case after the facts have been established the statutes provide the award, to wit, sixty-six and two-thirds per centum of the average weekly wage of the injured workman. The statutes then fix the maximum award per week which the commission may allow.
Under the statutes in force at the time of relator’s injury the maximum award established by law was eighteen dollars and seventy-five cents ($18.75) per week. While it is true that Section 1465-79, General Code, as then in effect, after fixing the maximum, contained this provision: “And not less than a minimum of eight dollars per week, unless the employee.’s wages shall be less than eight dollars per week, in which event he shall receive compensation equal to his full wages; but in no case to continue for more than six years from the date of the injury, nor to exceed three thousand, seven hundred and fifty dollars.”
It readily may be seen that an injured workman earning eight dollars per week even though paid for the full period of six years would receive less than three thousand seven hundred and fifty dollars ($3,750).
It should also be noted that under Section 1465-80, General Code, then in effect, providing for head or facial disfigurement, the commission was authorized to allow not to exceed three thousand seven hundred and fifty dollars ($3,750) for facial disfigurement. However, that authority was subject to the limitation as to the maximum weekly amount payable which amount was eighteen dollars and seventy-five cents ($18.75) per week.
That workmen’s compensation is based upon the period of one week as the unit of time in fixing compensation will admit of no serious dispute.
The statutes provide for weekly payments unless the commission, acting under authority of Section 1465-87, *437 General Code, malees payment in one or more lump sums.
The commission has continuing jurisdiction and may make one or several awards depending upon the nature of each particular claim.
One of the reasons for the continuing jurisdiction is found in the fact that the same injury may warrant several different awards of compensation. For example, áh injured workman might be entitled to an award for temporary total disability and permanent partial disability, or as here, temporary total disability and facial disfigurement, or for permanent total disability and death, or for occupational disease and death. Other similar situations could arise whereby one injury might entitle the workman to more than one award.
The commission is granted wide discretion in determining the average weekly wage and in fixing compensation in order to carry out the humane purposes of the act and to insure just and equitable treatment to the injured workman.
The General Assembly, fully cognizant of that purpose, provided that the award should be sixty-six and two-thirds per centum of the average weekly wage of the injured workman but not to exceed the maximum in dollars per week fixed by the applicable statute.
As we view the matter, the phrase “maximum award established by law,” as used in Section 35, Article IT of the Constitution, means the maximum amount per week, which the commission may award the injured workman, as fixed by the applicable statute and that in this case the “maximum award established by law” was eighteen dollars and seventy-five cents ($18.75) per week.
In Austin Co. v. Brown, 121 Ohio St., 271, at page 277, 167 N. E., 874, in considering the workmen’s compensation law this court used this language:
“It is neither charity, nor pension, nor indemnity, *438 nor insurance, nor wages, though, if a definition of each and all of these terras were placed in parallel columns with a definition of compensation, certain elements would be found common to all. The term ‘compensation’ has no striking similarity to any of them except the term ‘wages’ * * * .”
To this language could be added that compensation is neither damages nor penalty.
In Slatmeyer v. Industrial Commission, 115 Ohio St., 654, at page 658, 155 N. E., 484, the court, in discussing the constitutionality of Section 35, Article II, uses this language:
“The imposition of the added 50 per cent is an award just as much as is the original award.”
Should relator’s contention be sustained the result would be that in many cases the workman would receive not only full compensation but also an additional sum as damages or penalty. We do not think that such a result was intended by the framers or adopters of the constitutional amendment or by the G-eneral Assembly in enacting the compensation act.
We conclude that under the finding of the commission the relator was entitled to receive a sum equal to fifty per centum of eighteen dollars and seventy-five cents ($18.75) per week to be added to each award and to continue for the same period of time as the original award.
We are unable to determine from this record whether relator has been allowed the fifty per centum of the “maximum award established by law” for the failure of the employer to comply with a lawful requirement, and therefore the demurrer to the answer should be sustained and a writ of mandamus should issue com *439 manding respondent to award such sum, if any, as may be due in conformity with our conclusions .

Writ allowed.

Matthias, Hart, Williams and Turner, JJ., concur.
Zimmerman, J., concurs in paragraphs two, three and four of the syllabus and in the judgment.